IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT
OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| FRANK R DIFRANCO,<br>Plaintiff,<br>v.<br>KAREN A YARBROUGH, et al.,<br>Defendants. | Case No. 1:20-cv-07813<br>Judge Charles R. Norgle |

**ORDER**

Defendant Illinois State Board of Elections' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) [11] is granted. Illinois State Board of Elections is terminated from this case, and Plaintiff's claim that 10 ILCS 5/22-9.1 is unconstitutional fails as a matter of law. Defendants Patricia Fallon and Karen A Yarbrough's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) [14] is granted in the alternative. This case is stayed pending resolution of Plaintiff's Election Contest in the Circuit Court of Cook County, Illinois. Plaintiff shall submit brief, monthly status reports regarding the progress of his state court litigation, and whether the stay of this case should be lifted, on or before the last federal court business day of each month after November 2021. Accordingly, next status is due by December 30, 2021.

**MEMORANDUM OPINION**

Plaintiff Frank DiFranco was the Republican candidate who ostensibly lost to the Democratic candidate, Defendant Patricia Fallon, in the November 3, 2020 Judicial Election for Circuit Court Judge in the 12th Subcircuit of Cook County by 502 votes. He brings this action against Fallon, Cook County, the Cook County Board of Elections, the Illinois State Board of Elections, and Karen Yarbrough, in her personal and official capacity as the Clerk of Cook County, seeking (1) to recover damages for deprivation of his civil rights and (2) an order certifying him as the winner of that election. Plaintiff asserts that Defendants deprived him of due process and his equal protection rights by violating Illinois election procedures and rules. He claims that Defendants violated state law in part by (1) knowingly and willingly allowing votes to be counted

after November 17, 2020; (2) counting unauthorized and untimely Vote by Mail ballots; and (3) counting the same ballots more than one time. Compl. ¶¶ 28, 32, 40; see 10 ILCS 5/18A-15; 10 ILCS 5/19-8.

The complaint includes ten counts. Five counts are claims pursuant to 42 U.S.C. § 1983 against all Defendants: Count I (Procedural Due Process); Count II (Equal Protection); Count III (Substantive Due Process); Count IV (Due Process/Separation of Powers); and Count IX (First Amendment). Three counts are brought pursuant to Illinois law against all Defendants: Count VII (Willful and Wanton Conduct); Count VIII (Indemnification); and Count X (Illinois Constitution's Free and Fair Elections Clause). Count VI is a Monell claim pursuant to 42 U.S.C. § 1983 against Cook County. Finally, Count V is a declaratory action pursuant to 28 U.S.C. § 2201 against all Defendants, seeking in part that this Court declare the Illinois statute 10 ILCS 5/22-9.1 ("Section 22-9.1") unconstitutional. Plaintiff seeks an order declaring him the rightful winner of the election and that Section 22-9.1 of the Illinois Election Code is unconstitutional, and damages in excess of $1,000,000. Compl. at 34.

There are two motions to dismiss pending before the Court. First, Defendant Illinois State Board of Elections (the "Illinois Board") has filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim. Patricia Fallon and Karen Yarbrough have filed a separate motion to dismiss pursuant only to Federal Rule of Civil Procedure 12(b)(1). The Court will address each motion in turn, and for the following reasons, the motions are granted.

## I. STANDARD

Rule 8(a) of the Federal Rules of Civil Procedure requires that a complaint contain a "short and plain statement of the claim showing that the plaintiff is entitled to relief." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554-557 (2007). This statement must provide sufficient plausible facts

to put a defendant on notice of the claims against him. Brooks v. Ross, 578 F. 3d 574, 581 (7th Cir. 2009). The complaint "must provide enough factual information to 'state a claim to relief that is plausible on its face' and 'raise a right to relief above a speculative level.'" Doe v. Village of Arlington Heights, 782 F.3d 911, 914 (7th Cir. 2015) (quoting Twombly, 550 U.S. at 555, 570); Fed. R. Civ. P. 12(b)(6). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citations and quotation marks omitted). In reviewing a plaintiff's claim, the court "must construe all of the plaintiff's factual allegations as true, and must draw all reasonable inferences in the plaintiff's favor." Virnich v. Vorwald, 664 F.3d 206, 212 (7th Cir. 2011).

Motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) allow a party to challenge a court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). When reviewing such a motion, a court must "accept[ ] as true all well-pleaded factual allegations and draw[ ] reasonable inferences in favor of the plaintiffs." Bultasa Buddhist Temple of Chi. v. Nielsen, 878 F.3d 570, 573 (7th Cir. 2017). Further, a court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." Evers v. Astrue, 536 F.3d 651, 656–57 (7th Cir. 2008).

## II. ILLINOIS STATE BOARD OF ELECTIONS' MOTION TO DISMISS

The Illinois State Board of Elections argues that the Court lacks subject matter jurisdiction over any claims against the Illinois Board pursuant to the Eleventh Amendment. Defendant recognizes that Plaintiff might amend his complaint to properly sue the Illinois Board's individual commissioners but argues that the Court should deny leave to amend because Plaintiff lacks standing to bring his claims and the claims fail as a matter of law. Because the Court lacks subject

matter jurisdiction over any claims against the Illinois Board or its commissioners derived from alleged violations of state law, and Plaintiff's claim regarding the constitutionality of Section 22-9.1 fails as a matter of law, the Illinois Board is dismissed from this lawsuit.

A. Eleventh Amendment

The Eleventh Amendment shields states from any suit in law or equity commenced by an individual to which the state does not consent. Seminole Tribe of Fla. v. Fla., 517 U.S. 44, 54 (1996). The Illinois Board is a state agency and an arm of the State of Illinois for purposes of the Eleventh Amendment. Kroll v. Bd. of Trustees of Univ. of Illinois, 934 F.2d 904, 907 (7th Cir. 1991). A state's claim of immunity warrants dismissal of the state from litigation unless one of three exceptions apply. Those exceptions are when (1) a state consents to suit in federal court; (2) Congress uses its enforcement powers to abrogate a state's immunity, usually through the Fourteenth Amendment; or (3) the suit is within the parameters enumerated by the Supreme Court in Ex parte Young, 209 U.S. 123 (1908). Council 31 of the Am. Fed'n of State, Cty. & Mun. Emps., AFL-CIO v. Quinn, 680 F.3d 875, 882 (7th Cir. 2012). Here, the state has not consented to suit, and "Congress did not abrogate the states' sovereign immunity from suit under section 1983." Thomas v. Illinois, 697 F.3d 612, 613 (7th Cir. 2012). The question is therefore whether the Young doctrine can save the lawsuit as against the Illinois Board.

That doctrine "allows private parties to sue individual state officials for prospective relief to enjoin ongoing violations of federal law." Council 31, 680 F.3d at 882. Plaintiff concedes, as he must, that he has not named as a defendant any state official tasked with enforcement of state law, but he insists that "this defect is easily remedied" by allowing him to amend the complaint to add individual Illinois Board commissioners as defendants. Dkt. 21 at 1.

The Court declines to grant Plaintiff leave to amend the complaint because "it is clear that any amendment would be futile." Bogie v. Rosenberg, 705 F.3d 603, 608 (7th Cir. 2013)

(affirming dismissal). As the Illinois Board argues, any claim against individual members of the Illinois Board would fail as a matter of law. First, Young only allows for parties to obtain prospective injunctive relief, so Plaintiff could not recover monetary damages from members of the Illinois Board. Further, prospective injunctive relief is only allowed under Young for violations of federal law. While Plaintiff's § 1983 claims are cloaked as federal constitutional claims, they depend on the interpretation (and alleged violation) of Illinois state election law. See, e.g., Compl. ¶ 51 ("As a candidate for elective office in the State of Illinois, the Plaintiff had the right to expect that the procedures mandated by 10 ILCS 5/18A-15; and 10 ILCS 5/19-8 would be strictly adhered to in the administration of the election[.]"). Young is "inapplicable in a suit against state officials on the basis of state law." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 106 (1984). In such a case, "the entire basis for the doctrine of Young . . . disappears. A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law." Id. ("it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law."); Watkins v. Blinzinger, 789 F.2d 474, 484 (7th Cir. 1986) ("Young is limited [ ] to the award of remedies designed to end a continuing violation of federal law and necessary to vindicate the federal interest in the supremacy of that law . . . When there is no ongoing violation of federal law[ ], a suit against a state officer—a suit the decision of which will as a practical matter bind the state—should be treated for what it is: a suit against the state." (cleaned up)). And "declaratory relief should not be awarded where the eleventh amendment bars an award of monetary or injunctive relief; otherwise the declaratory relief would operate as a means of avoiding the amendment's bar." Council 31, 680 F.3d at 884.

In addition, any claims by Plaintiff against individual Illinois Board members in their individual capacities would fail because Plaintiff would have to allege that specific acts or

decisions made by individual members deprived him of his civil rights. See Vinning-El v. Evans, 657 F.3d 591, 592 (7th Cir. 2011) ("Section 1983 creates liability only for a defendant's personal acts or decisions."). In his complaint, Plaintiff never identifies specific acts or decisions made by any Illinois Board member that deprived him of his civil rights, nor does he attach a proposed amended complaint to his response adding any such allegations. Plaintiff alleges only that "The Board of Elections has certified this false tabulation," attributing the specific acts of unlawfully counting the votes only to the County Clerk. Compl. ¶ 57; see id. ¶ 52 (". . . the County Clerk, upon information and belief, engaged in one or more of the following deliberate acts: . . . "). Perhaps this is because, as the Illinois Board states, its role in the election was merely to publish the election results. Dkt. 12 at 4 n.1.

Plaintiff retorts only by pointing to his claim in Count V that Section 22-9.1 of the Illinois Election Code is unconstitutional, seemingly conceding that his other claims pursuant to § 1983 are not intended against the Illinois Board. See Dkt. 21 (Response) at 2 ("As to the SBOE, Plaintiff's claim is that a state statute violates the Federal Constitution."). Plaintiff argues that because he makes a claim under the First and Fourteenth Amendments to the Federal Constitution that the Illinois statute is unconstitutional, he alleges violations of federal law and can maintain suit against individual members of the Illinois Board. But, for the reasons stated above, the fact that Plaintiff includes one claim that a state statute is unconstitutional does not save his other claims based on violations of state law. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 120 (1984) (the Eleventh Amendment "is a specific constitutional bar against hearing even *federal* claims that otherwise would be within the jurisdiction of the federal courts" and "[t]his constitutional bar applies to pendent claims as well.") (emphasis in original); Cassell v. Snyders, 990 F.3d 539, 551 (7th Cir. 2021) (the Eleventh Amendment "prevents us from

entertaining the plaintiffs' request to enjoin Governor Pritzker from violating the state religious freedom law").

B. Constitutionality of Section 22-9.1

Plaintiff's claim that Section 22-9.1 is unconstitutional is dismissed. Because Section 22-9.1 survives rational basis review, Plaintiff has not stated a plausible claim that Section 22-9.1 is unconstitutional, and the claim fails as a matter of law. See Platt v. Brown, 872 F.3d 848, 853 (7th Cir. 2017) (affirming dismissal of complaint that alleged state law was unconstitutional).

Section 22-9.1 sets forth a process by which certain losing candidates may petition for a preliminary "discovery recount" audit of a sample of election precincts before they file an election contest petition in state court. Potts v. Fitzgerald, 784 N.E.2d 420, 423 (2003). This process of allowing the election authority to preliminarily review a sample of the election results helps ensure, in part, "that frivolous and baseless recounts are not conducted." Id. Specifically, within 5 days after election results are proclaimed, losing candidates receiving 95% of the number of votes of the winning candidate "may file a petition for discovery[.]" 10 ILCS 5/22-9.1. After the filing of the petition, ballots "shall be counted in specified precincts, not exceeding 25% of the total number of precincts within the jurisdiction of the election authority." Id. For a fee of $10.00 per precinct audited, "the election authority shall examine the ballots, voting machines, ballot cards, voter affidavits and applications for ballot, test the automatic tabulating equipment, and count the ballots, recorded votes, and ballot cards in the specified election districts or precincts." Id. Plaintiff argues that Section 22-9.1 unconstitutionally (1) limits the amount of obtainable information to 25% of precincts, (2) restricts Plaintiff's due process rights to a meaningful discovery procedure, and (3) violates equal protection by only allowing candidates, and not voters, to petition for a discovery audit.

In assessing the constitutionality of the statute, the Court applies rational basis review rather than more exacting scrutiny. "When we review the constitutionality of state legislation, we must ask whether the act in question impacts a fundamental right or targets a suspect class. When no suspect class or fundamental right is involved, we employ a rational basis test to determine whether the legislative act is constitutional." Eby-Brown Co., LLC v. Wisconsin Dep't of Agric., 295 F.3d 749, 754 (7th Cir. 2002), as amended on denial of reh'g (Aug. 12, 2002). There is no suspect class involved here. Plaintiff instead argues that the statute implicates a fundamental First and Fourteenth Amendment right and that the appropriate standard is strict or intermediate scrutiny. Plaintiff states that the First Amendment "prohibit[s] government from limiting the stock of information from which members of the public may draw." First Nat'l Bank of Boston v. Bellotti, 435 U.S. 765, 783 (1978). However, in making the argument, Plaintiff points to no First or Fourteenth Amendment case law regarding access to election result information, let alone case law establishing a fundamental right to a complete pre-contest audit of election results. He instead relies on broad statements like "[a]ccess to information regarding public election activity is particularly important because it leads to citizen discourse on public issues which is 'the highest rung of the hierarchy of First Amendment values and is entitled to special protection.'" Dkt. 21 (Response) at 5 (failing to include any citation for quotation); see Snyder v. Phelps, 562 U.S. 443, 452 (2011) ("*speech on public issues* occupies the highest rung of the hierarchy of First Amendment values") (emphasis added). True, certain political activities are protected under the First Amendment. See, e.g., Medina v. City of E. Chicago, Indiana, 184 F. Supp. 2d 805, 815 (N.D. Ind. 2001) ("It has long been established that political activities (i.e. running for office, supporting a particular political candidate) are protected by the First Amendment."). But Section 22-9.1 creates a preliminary discovery process that is separate from any later election contest the candidate may file in state court, thereby merely limiting the amount

of information *initially* available to the candidates. The candidates may be able to conduct a full audit later in the state court election contest. 10 ILCS 5/23-1.1a *et seq*. First Amendment cases cited throughout Plaintiff's response do not support the application of exacting scrutiny, because those cases deal with the complete restriction of access or dissemination of certain types of information. See, e.g., Sandvig v. Sessions, 315 F. Supp. 3d 1, 8 (D.D.C. 2018) (statute criminalized the intentional, unauthorized access of information on a computer); Bonnichsen v. U.S., Dep't of Army, 969 F. Supp. 628, 631 (D. Or. 1997) (plaintiffs were scientists denied access to study human remains). Ultimately, the Court is convinced that the statute does not implicate a fundamental right, and that rational basis review is the appropriate standard to be applied.

Section 22-9.1 survives rational basis review as a matter of law. Under that test, legislation will be upheld as long as it "bears a rational relation to some legitimate end." Id.; Goodpaster v. City of Indianapolis, 736 F.3d 1060, 1071 (7th Cir. 2013) (a state law is constitutional even if it is unwise, improvident, or out of harmony with a particular school of thought). "It is irrelevant whether the reasons given actually motivated the legislature; rather, the question is whether some rational basis exists upon which the legislature could have based the challenged law." Id.; see F.C.C. v. Beach Communications, Inc., 508 U.S. 307 (1993). "Those attacking a statute on rational basis grounds have the burden to negate every conceivable basis which might support it." Id. (citation omitted).

Plaintiff fails to meet this "heavy burden" because there are "numerous reasons" the legislature may have chosen to limit the discovery audit to a certain percentage of precincts and restrict voters from filing discovery petitions. Goodpaster, 736 F.3d at 1071. Such audits are burdensome, despite being of nominal cost to candidate-filers; they require an examination of ballots, voting machines, ballot applications, and tabulating equipment. Candidates have only thirty days to file an election contest, 10 ILCS 5/23-13, and limiting the percentage of precincts to

be preliminarily audited allows the election authority to quickly conduct the discovery and obtain at least some information about the election to help inform candidates whether to file a formal election contest in state court. The same logic applies to restricting voters from bringing petitions. Were any voter able to bring a petition, as opposed to just losing candidates, the 25% precinct limit might be circumvented, again overburdening the election authority and risking the timely completion of the audit.

Plaintiff argues that the state's goal is to prevent "frivolous and baseless recounts," and that the state's means of achieving that goal via the 25% limit and voter-restriction are unreasonable and arbitrary in that context. Potts v. Fitzgerald, 784 N.E.2d 420, 423 (2003). But as stated above, ensuring that the audits are conducted in a timely fashion is also a reasonable goal. The Court here will not "second-guess legislative choices" and fix the appropriate percentage for the legislature. Platt v. Brown, 872 F.3d 848, 853 (7th Cir. 2017) ("This is not to say that other, equally straightforward schemes (a flat $100 fee, for instance) do not exist" but "[u]nder a substantive due process challenge . . . we do not . . . evaluate the desirability or value of different policy alternatives; such is a distinctively legislative function."). The state's method of accomplishing its objectives bears a rational relation to some legitimate end, so the statute is constitutional and the claim is dismissed.[1]

## III. FALLON AND YARBROUGH MOTION TO DISMISS

Defendants Patricia Fallon and Karen Yarbrough ("Individual Defendants") have also filed a motion to dismiss pursuant to Rule 12(b)(1). They argue that all of Plaintiff's counts should be dismissed under the Younger and Colorado River abstention doctrines, named after Younger v.

[1] The Illinois Board also argues that Plaintiff lacks standing to bring his constitutional claim regarding Section 22-9.1 because Plaintiff fails to allege a concrete and particularized injury-in-fact and can obtain full access to information in his state court election contest. The Court need not address the argument.

Harris, 401 U.S. 37 (1971) and Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976). Because Plaintiff has filed a concurrent and parallel suit—an election contest—in state court, and exceptional circumstances exist warranting abstention, the Court declines to exercise jurisdiction under the Colorado River doctrine. However, the Court does not dismiss the case at this point. The case is instead stayed pending resolution of Plaintiff's state court election contest.

A. Plaintiff's State Court Election Contest Petition

On December 31, 2020, one day after filing the present lawsuit, Plaintiff filed an election contest petition in the Circuit Court of Cook County against Defendants Fallon, the Illinois Board, and Yarbrough, in her capacity as the local election authority and as the Cook County Clerk. Compl. at 2; dkt. 12-1 (Verified Election Contest Petition). According to Plaintiff's complaint, Plaintiff filed the election contest "against the identical Defendants in the Circuit Court of Cook County pursuant [to] 10 ILCS 5/23-1.1a arising from the same facts as alleged herein. That cause of action includes the identical constitutional claims as presented by the Plaintiff in this [federal] cause of action. The identical claims are included in the State Court action in order that the State Court may construe the State statutes referred to therein in light of the Plaintiff's federal claims." Compl. at 2. Despite Plaintiff's assertion regarding suing identical defendants, Cook County and Cook County Board of Elections were not named defendants in the state election contest.

In his election contest petition, Plaintiff asserts that "significant mistakes and fraud have been committed in the casting and counting of ballots[.]" Dkt. 12-1. He claims that the votes were counted "in derogation of the Cook County Clerk's statutory duties" in that "numerous invalid ballots were improperly counted," the clerk "counted ballots beyond the statutory deadline" prescribed by Section 19-8(g) and 18A-15(a) of the Illinois Election Code, and ballots were counted "for which there was no ballot envelope, as required by 10 ILCS 5/19-6 and 19-8(g)." Id.

¶¶ 11, 13-15, 32. If the Cook County Clerk's office had complied with law, says Plaintiff, he "would have been declared the legal winner of the election[.]" Id. ¶ 89. Plaintiff asks the state court to order a complete recount of all ballots and enter an order declaring him elected to the office of Judge of the 12th Subcircuit of the Cook County Judicial Circuit. Id. at 31.

B. Abstention Doctrine

Generally, federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." Colorado River, 424 U.S. 800, 817 (1976). Thus, "as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." Id. (quotations and citation omitted). However, certain court-created abstention doctrines require or allow courts to decline jurisdiction, typically to minimize friction between federal and state courts. "The Supreme Court has identified various circumstances in which federal courts must abstain from deciding cases otherwise within their jurisdiction. These abstention doctrines take their names from their corresponding Supreme Court decisions. See, e.g., District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983) (Rooker-Feldman abstention); Younger v. Harris, 401 U.S. 37 (1971) (Younger abstention); Burford v. Sun Oil Co., 319 U.S. 315 (1943) (Burford abstention); Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) (Rooker-Feldman abstention)." J.B. v. Woodard, 997 F.3d 714, 722 (7th Cir. 2021), reh'g denied (May 27, 2021).

However, the Seventh Circuit has affirmed abstention even when "none of the abstention doctrines is a literal or perfect fit." J.B. v. Woodard, 997 F.3d 714, 722 (7th Cir. 2021) ("Edwin came to federal court to go on the offensive . . . [such] disruption and interference would offend the principles on which the abstention doctrines rest. Edwin seeks a level of intrusion by the federal courts that is 'simply too high.'") (citing Courthouse News Serv. v. Brown, 908 F.3d 1063, 1074 (7th Cir. 2018)). "[A]bstention law doesn't demand an exact fit with the precise parameters of a

doctrinal category. Instead, the abstention inquiry is flexible and requires a practical judgment informed by principles of comity, federalism, and sound judicial administration. Driftless Area Land Conservancy v. Valcq, 16 F.4th 508, 527 (7th Cir. 2021), reh'g denied (Nov. 16, 2021) (citation omitted) (abstention decision rests "on a careful balancing of the important factors").

Still, the Court focuses on the Younger and Colorado River doctrines because "that is how the parties [have] presented their case," and finds that abstention in the form of a stay pursuant to Colorado River is warranted in this case. Loughran v. Wells Fargo Bank, N.A., 2 F.4th 640, 651 (7th Cir. 2021) ("largely agree[ing]" with the district court's Colorado River analysis and affirming the stay of proceedings "in deference to the ongoing state-court litigation").

1. *Younger* Abstention

Individual Defendants devote considerable time in their briefs arguing that the Court should abstain under the Younger abstention doctrine, given the three factors described in Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n: (1) is the state action an ongoing state judicial proceeding; (2) does the proceeding implicate important state interests; and (3) is there an adequate opportunity to raise constitutional challenges in the state proceeding. 457 U.S. 423 (1982) (emphasizing that Younger abstention rests on the "notion of "comity" . . . a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.").

The Court disagrees. While Younger doctrine "directs federal courts to abstain from exercising jurisdiction over federal claims that seek to interfere with pending state court proceedings," it "applies in only three limited categories of cases, none of which fits exactly here: where federal court intervention would intrude into ongoing state criminal proceedings, into state-

initiated civil enforcement proceedings akin to criminal prosecutions, or into civil proceedings implicating a state's interest in enforcing orders and judgments of its courts." J.B. v. Woodard, 997 F.3d at 722 (citing Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 72–73 (2013)). "Outside these three "exceptional" situations, Younger abstention is not appropriate even when there is a risk of litigating the same dispute in parallel and redundant state and federal proceedings." Mulholland v. Marion Cty. Election Bd., 746 F.3d 811, 816 (7th Cir. 2014) ("the critical consideration in evaluating a state civil proceeding is how closely it resembles a criminal prosecution"); see Malhan v. Sec'y United States Dep't of State, 938 F.3d 453, 462 (3d Cir. 2019) ("Only after a court finds that a proceeding fits one of those descriptions should it consider Middlesex's additional factors . . . Otherwise, divorced from their quasi-criminal context, the three Middlesex conditions would extend Younger to virtually all parallel state and federal proceedings." (cleaned up)).

Plaintiff's election contest, which is not state-initiated, is not a criminal matter nor a civil enforcement proceeding akin to a criminal prosecution. The third category—proceedings implicating a state's enforcement of court orders and judgments—includes, for example, "[c]ivil contempt orders and orders requiring the posting of bonds on appeal." Disability Rts. New York v. New York, 916 F.3d 129, 133 (2d Cir. 2019); see, e.g., Falco v. Justs. of the Matrimonial Parts of Supreme Ct. of Suffolk Cty., 805 F.3d 425, 427 (2d Cir. 2015) (affirming Younger abstention after father in a custody battle challenged the constitutionality of the New York law that authorized a court order requiring him to pay half of his children's court-appointed attorney fees). Because the election contest involving alleged violations of Illinois election law does not fit within a Younger category, abstention under Younger is not warranted.

## 2. *Colorado River* Abstention

The same is not true of abstention under the Colorado River doctrine. That doctrine "allows a federal district court to stay or dismiss a suit when a concurrent state court case is underway, but only under exceptional circumstances and if it would promote wise judicial administration." M&J Gen. Contractors, Inc. v. Symbiont Constr., Inc., No. 20-CV-945-JPS, 2021 WL 2138865, at *3 (E.D. Wis. May 25, 2021) (cleaned up) (citing Freed v. J.P. Morgan Chase Bank, N.A., 756 F.3d 1013, 1018 (7th Cir. 2014)). The Seventh Circuit has "found it useful to approach Colorado River abstention in two steps." Driftless, 16 F.4th at 526. "First, the court must determine whether the state and federal court actions are parallel." Freed, 756 F.3d at 1018. The cases are parallel if there is "a substantial likelihood that the state litigation will dispose of all claims presented in the federal case. [T]he cases need not be identical to fulfill the requirement of parallelism, but the court must examine whether 'substantially the same parties are contemporaneously litigating substantially the same issues in another forum.'" Id. at 1018-19 (court should examine whether cases raise the same legal allegations or arise from the same set of facts); Driftless, 16 F.4th at 526 ("Formal symmetry is unnecessary[.]"). Doubt regarding the parallel nature of the suits should be resolved in favor of exercising jurisdiction. Id. at 1019.

The Court is convinced that Plaintiff's state election contest and the present case are parallel suits. First, they involve substantially the same parties. While Plaintiff adds Cook County and the Cook County Board of Elections as defendants in this case, Karen Yarbrough was named in the election contest in her official capacity as the local election authority and the Cook County Clerk. And "the parallel nature of the actions cannot be destroyed by simply tacking on a few more defendants." Loughran v. Wells Fargo Bank, N.A., 2 F.4th 640, 647–48 (7th Cir. 2021). Plaintiff argues that Yarbrough and the Illinois State Board of Elections are just nominal parties in the election contest and the contest is limited to Plaintiff and Defendant Fallon because summons is

only issued against the person whose office is contested. 10 ILCS 5/23-21. Therefore, says Plaintiff, Fallon is the only real defendant in the election contest and the cases are not parallel. The Courts finds the argument unpersuasive.

But more importantly, the cases arise from the exact same set of facts and allegations and are both grounded in alleged violations of Illinois election law. True, the cases are not precisely identical. For example, Plaintiff here (1) seeks monetary damages, in addition to injunctive relief, and (2) asserts that Section 22-9.1 is unconstitutional. But Plaintiff litigates "substantially the same issues" in the state forum. Freed, 756 F.3d at 1019. Should the state court decide that state law was not violated, Plaintiff's federal civil rights claims largely, if not entirely, fail. Accordingly, there is a "substantial likelihood" that the state court will "dispose of" Plaintiff's claims. Id. at 1018. Driftless, 16 F.4th at 526 (finding that while cases weren't completely identical, "perfect symmetry isn't necessary" and claims were parallel because they "involve the same parties, the same facts, and the same issues" and will "be resolved by examining largely the same evidence[.]").

"The second step in the [Colorado River] framework is to determine whether exceptional circumstances justify abstention. A plethora of nonexclusive, unweighted factors can inform this question[.]" Driftless, 16 F.4th at 526; Freed, 756 F.3d at 1018 ("court must decide whether abstention is proper by carefully weighing ten non-exclusive factors."). Such factors include:

> "(1) whether the state has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the source of governing law, state or federal; (6) the adequacy of state-court action to protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim."

Freed at 1018 (no one factor is necessarily determinative). The Seventh Circuit has cautioned that this "overabundant list of factors 'is designed to be helpful, not a straitjacket. Different considerations may be more pertinent in some cases, and one or more of these factors will be irrelevant in other cases.'" Driftless, 16 F.4th at 526-27 (citing Loughran, 2 F.4th at 647). While the parties argue each factor, the Seventh Circuit has found "it neither necessary nor helpful to march through our 10-factor "test" and decide which factors support abstention and which do not." Driftless, 16 F.4th at 527 (factors in a multifactor, unweighted test often point in different directions and such tests can be cryptic when unattached to a substantive legal standard, as this one is).

Here, "[s]everal compelling considerations justify abstention[.]" Driftless, 16 F.4th at 527. First, while § 1983 can provide a cause of action for certain wilful violations of state statutes by election officials,[2] the source of Plaintiff's claims is state law. Cusick v. Chicago Bd. of Educ., No. 89 C 6534, 1989 WL 157348, at *4 (N.D. Ill. Dec. 20, 1989) (finding that the governing law "is for abstention purposes primarily that of the state" even though two of the counts, "while sounding in federal law, turn on an interpretation of state law."). "[A] state court's expertise in applying its own law favors a Colorado River stay." Freed v. J.P. Morgan Chase Bank, N.A., 756 F.3d 1013, 1022 (7th Cir. 2014); Lumen Const., Inc. v. Brant Const. Co., 780 F.2d 691, 696 (7th Cir. 1985) ("In order to determine the merits of [federal civil rights] claims, it will be necessary to sort out the contractual rights of the parties. Since the entire constellation of contractual claims is presented only in the state court proceeding and is governed by state law, the state court is in a far superior position to perform this task.").

[2] "Mere violation of a state statute by an election official . . . will not [give rise to a constitutional claim and an action under section 1983]." Hennings v. Grafton, 523 F.2d 861, 864 (7th Cir. 1975). However, certain election irregularities may, including certain "wilful conduct which undermines the organic processes by which candidates are elected[.]" Id.

Next, the risk of piecemeal litigation—where "different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results"—looms large here. LaDuke v. Burlington N. R. Co., 879 F.2d 1556, 1560 (7th Cir. 1989) (staying litigation pursuant to Colorado River). With piecemeal litigation, problematically, (1) a party may try to accelerate proceedings in a favorable forum (or vice-versa) and (2) the two courts might create a conflict by mistakenly resolving an issue differently than the other forum. Id. Even if the claims are not identically presented in each forum, "the danger of piecemeal litigation does not turn on formal identity of issues but on concerns about the efficient use of judicial resources and the public's perception of the legitimacy of judicial authority[.]" Tyrer v. City of S. Beloit, Ill., 456 F.3d 744, 756 (7th Cir. 2006). Multi-jurisdictional legal challenges involving the same subject matter are costly, disruptive, and run the risk of a collision of conflicting rulings. Accordingly, the filing of piecemeal suits like these can "fairly be characterized as contrived," especially because "state courts routinely apply federal constitutional standards, as they must under the Supremacy Clause." Driftless, 16 F.4th at 527 (a federal lawsuit could be considered contrived when the plaintiff files parallel suits "seeking substantially the same relief from substantially the same parties").

Plaintiff responds by contradicting his complaint, stating that the election contest "does not include the identical constitutional claims presented by Plaintiff in his 1983 Action" and is purely statutory. Dkt. 18 (Response) at 6; see Compl. at 2 (stating his election contest cause of action includes the identical constitutional claims presented in this cause of action). For Plaintiff, his election contest merely seeks an accurate determination of the number of votes for and against each candidate. Wagler v. Stoecker, 393 Ill. 560, 562 (1946). But his election contest—like his complaint here—asserts fraud and the unlawful change of election totals. See e.g., dkt. 12-1 ¶¶ 6, 11, 20. In addition, he claims that the Circuit Court of Cook County does not have concurrent jurisdiction over his 1983 claims and the claims are therefore procedurally barred. Doelling v. Bd.

of Ed. of Cmty. High Sch. Dist. No. 88, Washington Cty., 17 Ill. 2d 145, 146 (1959) ("An election contest is a statutory proceeding, and the procedure prescribed therefor must be strictly followed."). But Plaintiff later admits that he "*chose* not to raise the [Federal Constitutional] claims in the Election Contest." Dkt. 18 at 10 (emphasis added). He also cites no law directly supporting the proposition that his constitutional claims are procedurally barred from being heard in the election contest or state court. Id. State courts are generally capable of protecting Plaintiff's constitutional rights. See Steffel v. Thompson, 415 U.S. 452, 460-61 (1974) ("a pending state proceeding, in all but unusual cases, would provide the federal plaintiff with the necessary vehicle for vindicating his constitutional rights").

Plaintiff invokes England v. Louisiana State Board of Medical Examiners to argue that he properly and expressly reserved his rights to litigate the federal questions in a federal forum by filing a "Notice of Reservation of Federal Claims" in his election contest. 375 U.S. 411, 466 (1964) (the "right of a party plaintiff to choose a Federal court where there is a choice cannot be properly denied."); see dkt. 18-2. He insists that "[a]s such, the decision of the federal questions should be deferred until the potentially controlling state law issues are authoritatively put to rest[.]" Dkt. 18 at 6. While the Court today stays the case, including Plaintiff's § 1983 claims, pending the state election contest, the Court clarifies that England does not apply here. That case merely "permits the *federal* court to engage in Pullman abstention" and is "not relevant here . . . where the purpose of abstention is not clarification of state law, but reluctance to interfere with an ongoing state judicial proceeding." Duty Free Shop, Inc. v. Administracion De Terrenos De Puerto Rico, 889 F.2d 1181, 1183 (1st Cir. 1989) (emphasis in original) (holding that Younger abstention was proper). Here, the Court abstains under Colorado River due to a parallel state court case, not Pullman, so England is not applicable.

Ultimately, while certain factors regarding exceptional circumstances warranting abstention may be neutral or slightly in favor of Plaintiff,[3] the factors regarding concurrent jurisdiction, piecemeal litigation, the source of governing law, the adequacy of state-court action to protect Plaintiff's rights, and the contrived nature of the suit favor Defendants and lead the Court to the conclusion that abstention is warranted. Adjudicating the present action and affording relief in this case would require a finding of unlawful conduct in violation of Illinois law, and would thereby disrupt the state court proceeding. Abstention here comports with principles of comity, federalism, and sound judicial administration by conserving judicial resources and avoiding duplicative litigation and the risk of conflicting rulings.

Defendants argue that the case should be dismissed. However, the Seventh Circuit has repeatedly stated that "a stay, not a dismissal, is the appropriate procedural mechanism for a district court to employ in deferring to a parallel state court proceeding under the Colorado River doctrine" so that the federal forum remains "available to a plaintiff should the state court litigation prove not to be 'an adequate vehicle for the complete and prompt resolution of the issues between the parties.'" Selmon v. Portsmouth Drive Condo. Ass'n, 89 F.3d 406, 409 (7th Cir. 1996) (citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 28 (1983)); Montano v. City of Chicago, 375 F.3d 593, 602 (7th Cir. 2004). Such a stay is within the inherent authority of the Court. See Landis v. N. Am. Co., 299 U.S. 248, 254 (1936). The Court considers: (1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (2) whether a stay will simplify the issues in question and streamline the trial; and (3) whether a stay will

[3] The Court concludes the following: (1) The case does not pertain to property rights, so that factor is neutral; (2) the forums are "equally convenient" in the Northern District of Illinois, which is neutral. Loughran v. Wells Fargo Bank, N.A., 2 F.4th 640, 650 (7th Cir. 2021); (3) the suits were begun within one day of each other, which is neutral; (4) both cases are at the motion to dismiss stage, which is neutral; and (5) the election contest cannot be removed, and the "unavailability of removal *favors* a stay, because the purpose of this factor is to prevent litigants from circumventing the removal statute." Id. at 650 (7th Cir. 2021) (emphasis in original).

reduce the burden of litigation on the parties and on the Court. Ozinga v. U.S. Dep't of Health & Human Servs., No. 13 C 3292, 2013 WL 12212731, at *1 (N.D. Ill. Aug. 14, 2013). Here, the stay will merely delay the resolution of Plaintiff's damages claims, and resolution of the state election contest may resolve or narrow the scope of Plaintiff's claims in this case. Accordingly, this case is stayed pending resolution of Plaintiff's election contest.

## IV. CONCLUSION

In general, "federalism concerns caution against excessive entanglement of federal courts in state election matters." Bodine v. Elkhart Cty. Election Bd., 788 F.2d 1270, 1272 (7th Cir. 1986). "The reticence of federal courts to intrude on state election matters is well established." Raila v. Cook County Officers Electoral Board, et al., No. 19 C 7580, 2021 WL 5179913, at *4 (N.D. Ill. Nov. 8, 2021) (citing Dieckhoff v. Severson, 915 F.2d 1145, 1148 (7th Cir. 1990)).

Illinois State Board of Elections' motion to dismiss is granted. The Illinois Board is dismissed from this suit because the court lacks subject matter jurisdiction pursuant to the Eleventh Amendment. Leave to amend the complaint is denied because such amendment would be futile. Plaintiff's claims against individual commissioners of the Illinois State Board of Elections would fail because they are derived from alleged violations of state law. In addition, 10 ILCS 5/22-9.1 survives rational basis review and is therefore constitutional as a matter of law, so that claim is dismissed.

Patricia Fallon and Karen Yarbrough's motion to dismiss is granted in the alternative. Plaintiff brings this lawsuit concurrently with a state election contest in Illinois state court. Those lawsuits are parallel in nature, and exceptional circumstances and wise judicial administration justify abstention, which comports with principles of comity, federalism, and judicial economy. The case is therefore stayed pending resolution of Plaintiff's election contest.

Plaintiff shall submit brief, monthly status reports regarding the progress of his state court litigation, and whether the stay of this case should be lifted, on or before the last federal court business day of each month after November 2021. Accordingly, next status is due by December 30, 2021.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

DATE: November 29, 2021